IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRADLEY JACOBS,                          *
*a minor, by his parents and next friends,*
*Charles and Elizabeth Jacobs, et al.,*        *

      Plaintiffs,                        *

v.                                       *          Civil Action No. RDB-06-942

DR. JOE A. HAIRSTON                       *
*(officially as), Superintendent,*
*Baltimore County Public Schools, et al.,*     *

      Defendants.                        *

*      *      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM OPINION

Charles and Elizabeth Jacobs, in their own right and on behalf of their son, Bradley Jacobs (collectively, "Plaintiffs"), bring this action against Dr. Joe Hairston in his official capacity as Superintendent of Baltimore County Public Schools and the Board of Education of Baltimore County (collectively, "Defendants") alleging violations of the Individuals with Disabilities Education Act, as amended, 20 U.S.C. §§ 1400, *et seq*. ("IDEA"), section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504" or "Rehabilitation Act"), 42 U.S.C. § 1983, and Maryland law.  Plaintiffs appeal the January 31, 2006 decision of Administrative Law Judge David Hofstetter of the Maryland State Office of Administrative Hearings denying their request for reimbursement of tuition and costs to send Bradley to the Friendship School, a private school offering individualized education for children with disabilities, during the 2005-2006 school year.  Pending before this Court are the parties' cross-motions for summary judgment.  The parties' submissions have been reviewed and oral arguments were heard at a hearing held on April 23, 2007, pursuant to Local Rule 105.6.  For the following reasons,

Plaintiffs' Motion for Summary Judgment is DENIED, Defendants' Motion for Summary

Judgment is DENIED, and the case will be REMANDED to the Maryland Office of

Administrative Hearings for additional proceedings consistent with this Memorandum Opinion.

BACKGROUND & PROCEDURAL HISTORY

**A.     The Individuals with Disabilities Education Act**[1]

        Congress enacted the Individuals with Disabilities Education Act ("IDEA") in 1990 "to

ensure that children with disabilities have available to them a free appropriate public education"

or "FAPE."[2]  20 U.S.C. § 1400(d)(1)(A) (2006).  In order to achieve this objective, states can

receive federal funding for education as long as they make a FAPE available to all of their

disabled children.  *Id*. § 1412(a).  A FAPE must "provide such children with meaningful access

to the educational process" and "be reasonably calculated to confer some educational benefit

. . . ."  *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 526 (4th Cir. 2002) (citing *Bd. of

Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 192,

207 (1982)).  A disabled child must be educated in the "least restrictive environment" possible,

but he or she should also be given opportunities to participate in classes and activities with non-

---

        [1] Although the Complaint alleges violations of the IDEA, Section 504 of the
Rehabilitation Act, 42 U.S.C. § 1983, and Maryland law, the background of the case and the
parties' submissions focus primarily on alleged violations of the IDEA.

        [2] A FAPE includes "special education and related services that (A) have been provided at
public expense, under public supervision and direction, and without charge; (B) meet the
standards of the State educational agency; (C) include an appropriate preschool, elementary
school, or secondary school education in the State involved; and (D) are provided in conformity
with the individualized education program required under [the IDEA]."  20 U.S.C. § 1401(9)
(2006).

disabled children where appropriate.  20 U.S.C. § 1412(a)(5)(A) (2006).

In order to ensure that disabled students receive a FAPE, the IDEA requires that states create and update annually an individualized education program ("IEP") for each disabled child, identifying the child's levels of functioning and academic performance, setting specific academic and functional goals to be achieved during the school year, and describing an educational plan that will achieve those goals.  *Id*. § 1414(d).  An IEP is created and reviewed by an "IEP team" consisting of the child's parents, regular and special education teachers, representatives of the applicable school district, and the child if appropriate.  *Id*. § 1414(d)(1)(B).  If an IEP recommends that the child be placed in a non-public school offering special education, the school district must pay for the private education.  *See id*. § 1412(a)(10)(B)(i).  *See also* Md. Code Ann., Educ. § 8-406(c)(1)-(2) (LexisNexis 2004 & Supp. 2005).

The IDEA provides a series of procedural safeguards for both parents and school districts.  20 U.S.C. § 1415 (2006).  For example, if parents are dissatisfied with their child's IEP, ultimate school placement, or progress, they can file a complaint with the state or local educational agency and request an impartial due process hearing.[3]  *Id*. § 1415(f).  The parties must hold a resolution session prior to the hearing to try to resolve the issues.  *Id*. § 1415(f)(B). If no agreement is reached, an impartial hearing officer will preside over a due process hearing and decide "whether  the child received a free appropriate public education."  *Id*. § 1415(f)(3)(A), (E).  The hearing officer's decision may be appealed within ninety days to a federal district court.  *Id*. § 1415(f)(3)(g), (i)(2).

---

[3] In Maryland, complaints must be filed with the State Board of Education, while requests for a due process hearing are submitted to the applicable local school district and the Maryland Office of Administrative Hearings.  Md. Code Ann., Educ. § 8-413(d) (LexisNexis 2006).

**B.       Factual Background**

Bradley Jacobs ("Bradley") was born on February 5, 1992.  He and his parents, Charles and Elizabeth Jacobs ("the Jacobs") reside in Baltimore County, Maryland.  Bradley has been diagnosed with numerous learning disabilities and is therefore eligible to receive a free appropriate public education under the IDEA.  Beginning with the 2000-2001 school year, the Jacobs enrolled their son in The Lab School of Washington, Baltimore campus ("Baltimore Lab"), a private school offering special education services.  Pursuant to a settlement agreement between the Jacobs and the Baltimore County Public Schools ("BCPS"), BCPS funded his placement at Baltimore Lab for academic years 2002-2003, 2003-2004, and 2004-2005.

On January 11, 2005, the Jacobs requested that BCPS continue to pay for Bradley's education at Baltimore Lab for the 2005-2006 academic year.  BCPS held a meeting to discuss Bradley's IEP on April 13, 2005.  Present were Mrs. Jacobs, a representative of Baltimore Lab, a representative of the public middle school in the area, and other teaching staff.  At the meeting, the IEP team recommended—and Bradley's mother agreed—that a variety of observations and assessments needed to be performed in order to update Bradley's IEP.  The recommended observations were conducted, and the IEP team met for a second time on June 23, 2005, to review the results.  At this meeting, a psychologist from Baltimore Lab was also present.  The team decided that an educational assessment was needed, and Mrs. Jacobs again gave her consent.  On July 29, 2005, the IEP team met for a third time to review the educational assessment.  The team drafted an IEP that set a variety of goals for Bradley in areas of reading, math, writing, speech, and fine motor skills, as well as addressing social, emotional, and behavioral issues.  Bradley's mother was present at the meeting and agreed to the IEP's

4

conclusion that Bradley continue to receive private special education.

On August 10, 2005, the Jacobs received notice from BCPS that Baltimore Lab was able to implement Bradley's IEP for the 2005-2006 academic year. At some point during the summer, they questioned whether Baltimore Lab was providing a sufficient education and decided that their son would be better served at the Friendship School ("Friendship"), another private school offering special education. In late August 2005, with no notice to BCPS, the Jacobs secured Bradley's admission to the Friendship School, and he began attending on September 6, 2005.

On September 12, 2005, the Jacobs sent notice to BCPS of their decision to enroll Bradley in Friendship rather than Baltimore Lab, because "he would be more appropriately placed at the Friendship School." (Defs.' Mem. Supp. Summ. J. Ex. 8.) Their letter requested that BCPS fund Bradley's placement at Friendship. BCPS did not respond to the Jacobs' letter.[4] The Jacobs sent a second letter on November 17, 2005, requesting a response to their first letter. They sent a third letter four days later, on November 21, 2005, notifying BCPS of their intention to file a complaint for a due process hearing. They filed for a due process hearing on December 9, 2005. As a prerequisite to the due process hearing, the parties attended a resolution session on December 16, 2005, but were unable to reach an agreement.

The case was assigned to Administrative Law Judge David Hofstetter ("A.L.J. Hofstetter") of the Maryland State Office of Administrative Hearings ("OAH"), and a hearing on

---

[4] At the hearing held on April 23, 2007, counsel for Defendants indicated that someone in BCPS called the Jacobs after the school district received their letter and forwarded it to the appropriate office. However, the subject of the phone call is unknown. Regardless, counsel for Defendants conceded that a written response was necessary.

the merits was scheduled for January 31, 2006.  On January 24, 2006, the Jacobs filed a motion

for summary decision on the ground that Bradley did not receive a FAPE because BCPS failed to

comply with the IDEA's procedural requirements.  (*See* Defs.' Mem. Supp. Summ. J. Ex. 28.)  In

particular, they argued that BCPS failed to provide them with notice that it would not fund

Bradley's transfer to Friendship after they sent the school district a letter.[5]  (*Id.*)  BCPS filed a

cross-motion for summary decision on the grounds that it had not violated the IDEA, because its

failure to respond to the Jacobs' letter, even if it could be considered a procedural violation, did

not amount to a denial of a FAPE to Bradley.  (*See* Defs.' Mem. Supp. Summ. J. Ex. 29.)  On

January 31, 2006, A.L.J. Hofstetter did not hold a hearing on the merits as scheduled, but rather

held a motions hearing on the cross-motions for summary judgment.  A due process hearing on

the merits was postponed until March 7, 2006, in the event that the motions were not dispositive.


A.L.J. Hofstetter issued a Decision on February 21, 2006, granting BCPS's motion for

summary decision and denying the Jacobs' motion.  *Jacobs v. Baltimore County Public Schools*,

O.A.H. No. MSDE-BCNY-OT-05-60161, at 14 (Md. Office Admin. Hrgs., Feb. 21, 2006)

(A.L.J. Hofstetter) [hereinafter "A.L.J. Decision"].  He first concluded that BCPS violated the

procedural requirements of the IDEA by ignoring the Jacobs' letter requesting reimbursement of

Bradley's enrollment at Friendship.  *Id.* at 12.  However, he did not find that this procedural

violation resulted in the denial of a FAPE to Bradley.  *Id.* at 13.  A.L.J. Hofstetter reasoned that

BCPS had already agreed to fund Bradley's placement at Baltimore Lab to implement the child's

---

[5] Under the IDEA, a school district must provide prior written notice to parents of a
disabled child whenever it "(2) refuses to . . . change the . . . educational placement of the child.
. . ."  20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503 (2007).

IEP. *Id*. at 11. He also noted that "[i]t is further undisputed that such a placement is 'appropriate' (even if it is not the Parents' preferred placement)." *Id*. In support of this conclusion, he cited the language of both the Jacobs' September 12, 2005 letter to BCPS stating that Bradley would be "more appropriately placed" at Friendship and their December 9, 2005 request for a due process hearing stating that Friendship would be a "better educational fit." *Id*. He further noted that in the hearing, the Jacobs "essentially conceded that the placement at the Lab School was legally appropriate." *Id*. Relying on case law holding that the IDEA only guarantees an appropriate education, not the *most* appropriate education, A.L.J. Hofstetter held that Bradley was not denied a FAPE and granted BCPS's motion for summary decision. *Id*. at 8, 14.

The Jacobs filed a four-count Complaint with this Court on April 12, 2006, against Dr. Joe A. Hairston, Superintendent of the Baltimore County Public Schools, and the Board of Education of Baltimore County appealing the administrative decision. Count I alleges that BCPS denied Bradley a FAPE in violation of the IDEA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and Maryland law. Count II claims that the failure of A.L.J. Hofstetter to order the Defendants to place and fund Bradley in an appropriate program violates the IDEA and Maryland Law. Count III alleges that the Defendants violated the IDEA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and Maryland law by failing to provide the Jacobs with due process. Finally, Count IV alleges that A.L.J. Hofstetter denied the Plaintiffs due process when he failed to "render a proper decision" on substantive grounds. The Plaintiffs seek declaratory, injunctive, and monetary relief, including the costs of Bradley's enrollment in the Friendship School for the 2005-2006 school year. On October 30, 2006, Plaintiffs filed a Motion

for Summary Judgment (Paper No. 11), and Defendants filed a Motion for Summary Judgment

(Paper No. 12).  On April 23, 2007, a hearing was held on the motions.

STANDARD OF REVIEW

The United States Court of Appeals for the Fourth Circuit Court has articulated an

appropriate standard to be applied in IDEA cases:

> In a judicial proceeding under the IDEA, a reviewing court is obliged
> to conduct a modified de novo review, giving "due weight" to the
> underlying administrative proceedings.  In such a situation, findings
> of fact made in administrative proceedings are considered to be *prima
> facie* correct, and if a reviewing court fails to adhere to them, it is
> obliged to explain why.  The court is not, however, to "substitute [its]
> own notions of sound educational policy for those of local school
> authorities."

*MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 530-31 (4th Cir. 2002) (citations omitted).

The IDEA itself provides the test that a due process hearing officer, and now this Court, must

apply to determine if a child was denied a FAPE.  Generally, "a decision made by a hearing

officer shall be made on substantive grounds based on a determination of whether the child

received a free appropriate public education."  20 U.S.C. § 1415(f)(3)(E)(i) (2006).  However,

> [i]n matters alleging a procedural violation, a hearing officer may
> find that a child did not receive a free appropriate public education
> only if the procedural inadequacies-- (I) impeded the child's right to
> a free appropriate public education; (II) significantly impeded the
> parents' opportunity to participate in the decisionmaking process
> regarding the provision of a free appropriate public education to the
> parents' child; or (III) caused a deprivation of educational benefits.

*Id*. § 1415(f)(3)(E)(ii).  Thus, this Court's analysis differs depending on whether the alleged

violation of the IDEA was substantive or procedural.

This Court must also consider the standard set forth in Rule 56(c) of the Federal Rules of

Civil Procedure that summary judgment is granted only where there is no genuine issue as to any

8

material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. *Nat'l City Bank of Indiana v. Turnbaugh*, 463 F.3d 325, 329 (4th Cir. 2006).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material.  *Id.* at 248. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the nonmoving party must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

Where, as here, both parties file motions for summary judgment, the court applies the same standards of review to each motion.  *Monumental Paving & Excavating, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985)).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with

the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).

<u>DISCUSSION</u>

Both the Plaintiffs and the Defendants have moved for summary judgment, contending that there are no genuine issues of material fact on this appeal from the administrative proceeding.  However, at the hearing on April 23, 2007, counsel for the parties acknowledged that there is not a full record in this case with respect to factual findings as to a FAPE for Bradley Jacobs ("Bradley").  This Court finds that there is a genuine issue of material fact as to whether Bradley was denied a FAPE, and that both parties should have had an opportunity during the administrative process to present testimony and other evidence as to the appropriateness of both the Baltimore Lab and Friendship schools.  Accordingly, both motions for summary judgment will be denied and this matter will be remanded to the Maryland Office of Administrative Hearings ("OAH") for a due process hearing on the merits.

**A.      Individuals with Disabilities Education Act**

The Plaintiffs' Complaint principally alleges that the Defendants violated the Individuals with Disabilities Education Act by failing to provide their son Bradley with a free appropriate public education.  As noted above, the standard that an administrative law judge should apply is provided by the statute itself, and differs depending on whether the Plaintiffs allege a substantive or procedural violation of the IDEA.  The Jacobs' motion for summary decision alleged that Bradley was denied a FAPE because BCPS failed to respond to their September 12, 2005 letter requesting reimbursement for Bradley to attend the Friendship School—allegedly a procedural violation under 20 U.S.C. § 1415(b)(3) (2006).  Thus, this Court must apply the following

standard:

> In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies-- (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits.

*Id*. § 1415(f)(3)(E)(ii).

First, however, this Court must determine whether there was in fact a procedural violation.  Defendants argued before A.L.J. Hofstetter that the Jacobs' September 12, 2005 letter requesting that BCPS reimburse the costs of sending Bradley to Friendship did not trigger the notice requirements of 20 U.S.C. § 1415(b)(3) because the letter itself did not comply with the requirements for a parent's formal request to change placement.  (Defs.' Mem. Supp. Summ. J. Ex. 29.)  Under Maryland law implementing the IDEA, if parents do not provide prior written notice that they intend to enroll their child in a private school, the school board does not have to reimburse them.  Md. Code Ann., Educ. § 8-413(i)(1)[6] (LexisNexis 2004 & Supp. 2005).  The notice must formally reject the placement proposed by the school board and include the reasons for the rejection.  *Id*.  While these requirements specifically apply to parents moving their child from a public school to a private school, the IDEA and accompanying Maryland laws still require that parents provide adequate notice for unilateral transfers between private schools.

The Jacobs' letter simply said the parents had decided to move Bradley to Friendship and

---

[6] Section 8-413 of the Education Article of the Maryland Code was amended, effective July 1, 2006.  S. 107, 2006 Leg., 421st Sess. (Md. 2006).  The amendments eliminated the notice requirements, among other things.  However, this Court must apply the version of the statute that was in effect at the time of the events leading to this lawsuit.

sought reimbursement for the new school.  The parents did not ask to reopen the IEP process,

provide reasons why the existing IEP was inadequate, or state that the Lab School was an

inappropriate placement; it merely said Bradley would be "*more* appropriately placed" at

Friendship.  (Defs.' Mem. Supp. Summ. J. Ex. 8 (emphasis added).)  Nonetheless, even though

their letter lacked specificity, the IDEA required BCPS to provide an immediate response to Mr.

and Mrs. Jacobs.  BCPS's failure to provide such a response constitutes a procedural violation of

the IDEA.  Accordingly, the next inquiry under Section 1415(f)(3)(E)(ii) is whether that

violation "(I) impeded the child's right to a free appropriate public education; (II) significantly

impeded the parents' opportunity to participate in the decisionmaking process regarding the

provision of a free appropriate public education to the parents' child; or (III) caused a

deprivation of educational benefits."

### 1.    Impeding the Right to a FAPE

As to the first prong, in order to find that the procedural violation impeded Bradley's

right to a FAPE, there must be a factual determination as to whether Baltimore Lab would have

offered Bradley a FAPE in the 2005-2006 school year.  If Baltimore Lab were not an appropriate

placement, then there must be a determination with respect to whether Friendship could offer a

FAPE.[7]  As this case is an appeal from an administrative decision, this Court must ordinarily

---

[7]  The Plaintiffs concede that Friendship has not been certified by the state of Maryland
as a state-approved special education school.  (Pls.' Mem. Supp. Summ. J. 25.)  Under the IDEA,
in order for a school to offer a FAPE, the school must "meet the standards of the State
educational agency."  20 U.S.C. § 1401(9)(B) (2006).  However, because the record lacks any
evidence as to BCPS's decisionmaking process when it selected Baltimore Lab to implement
Bradley's IEP during the 2005-2006 school year, it is unclear at this time whether that factor
would preclude Friendship from even being considered as a potential placement.  This issue
should be explored on remand.

give deference to any factual findings made by the administrative law judge, because "findings of fact made in administrative proceedings are considered to be *prima facie* correct. . . ." *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 530-31 (4th Cir. 2002) (citations omitted). However, there was no factual determination made in this matter as there was never a due process hearing on the merits.

In his decision, A.L.J. Hofstetter concluded as a matter of law that Bradley was not denied a FAPE because the Baltimore Lab school offered an appropriate education.  A.L.J. Decision at 13.  Specifically, he noted that "[i]t is . . . undisputed that such a placement is 'appropriate' (even if it is not the Parents' preferred placement)."  *Id.* at 11.  The fact that Baltimore Lab had been deemed appropriate for the prior school years is not necessarily conclusive that it and not the Friendship school was appropriate for the academic year in question without presentation of evidence and testimony and a factual finding by the administrative law judge.  Indeed, the record in this case indicates that BCPS offered to introduce evidence that Friendship was an inappropriate placement, in recognition of the fact that legal arguments would not necessarily suffice to support a factual determination.  (Hearing Tr. 27:8-10, Jan. 31, 2006.)

In reviewing the administrative record in this case, it is the view of this Court that there is insufficient evidence concerning the two schools to make a factual finding as to a free appropriate public education for Bradley Jacobs.  Quite simply, this matter should not have been resolved on summary decision motions but should have been resolved after a due process hearing on the merits.  Thus, the admitted procedural violation of BCPS may have impeded Bradley Jacobs's right to a free appropriate public education.

**2.      Significantly Impeding the Parents' Involvement**

As to the second prong of this standard, this Court finds that BCPS's procedural violation did not "significantly" impede the Jacobs' involvement in the decisionmaking process.  In January of 2005, the Jacobs requested that Bradley continue to attend Baltimore Lab for the 2005-2006 school year, and Mrs. Jacobs participated in a thorough IEP process in the spring and summer of 2005.  At no time did the Jacobs question the appropriateness of Baltimore Lab. Thus, the Plaintiffs cannot argue that they were denied access to the original IEP process.  They also waited until September 12, 2005—after Bradley was enrolled and taking classes at Friendship—before notifying BCPS of their decision to move him to that school.  At the motions hearing held on April 23, 2007, counsel for the Plaintiffs even conceded that the Jacobs could have notified the school board earlier than September 12, 2005.  Thus, although BCPS should have provided some kind of written response to the Jacobs' letter, its failure to do so did not deny the parents involvement in the decisionmaking process.

**3.      Depriving Education Benefits**

As to the third prong, the Plaintiffs do not contend that Bradley was denied educational benefits as a result of BCPS's procedural violation.  On the contrary, they argue that Bradley made significant progress at Friendship.  (Pls.' Mem. Supp. Summ. J. 24-25; Jacobs Decl. ¶ 9.) Thus, there is no basis to support a finding that BCPS's failure to respond in writing to the Jacobs' September 12, 2005 letter caused a deprivation of educational benefits.

Accordingly, this case shall be REMANDED to the Maryland Office of Administrative Hearings to make a factual determination as to whether Baltimore Lab or the Friendship School was an appropriate placement to implement Bradley's IEP during the 2005-2006 school year.

**B.      The Rehabilitation Act of 1973**

Plaintiffs allege that the Defendants denied their son Bradley a free appropriate public

education in violation of Section 504 of the Rehabilitation Act of 1973.  Section 504 provides:

> No otherwise qualified individual with a disability in the United
> States, as defined in section 7(20) [29 U.S.C. § 705(20)], shall, solely
> by reason of her or his disability, be excluded from the participation
> in, be denied the benefits of, or be subjected to discrimination under
> any program or activity receiving Federal financial assistance or
> under any program or activity conducted by any Executive agency or
> by the United States Postal Service.

29 U.S.C. § 794 (2006).  It is undisputed that Section 504 applies to BCPS, and that the school

system cannot deny disabled students access to a public education based on their disabilities.

Defendants argue, however, that Plaintiffs' Section 504 claims are identical to their IDEA claims

and therefore cannot survive summary judgment.  (Defs.' Mem. Supp. Summ. J. 16-17.)  This

Court has previously held that where a plaintiff's "IDEA and § 504 claims are identical, and

their IDEA claim failed, their § 504 claim must fail as well."  *Alexis v. Bd. of Educ. for

Baltimore County Pub. Sch.*, 286 F. Supp. 2d 551, 560 (D. Md. 2003) (citations omitted);

*Steinberg v. Weast*, 132 F. Supp. 2d 343, 349 (D. Md. 2001); *Jones v. Washington County Bd. of

Educ.*, 15 F. Supp. 2d 783, 787 (D. Md. 1998).  In light of the fact that the case will be remanded

to OAH for a factual finding on the appropriateness of Baltimore Lab, this Court will reserve

judgment on Plaintiffs' Section 504 claims until a disposition has been made on their IDEA

claims.

**C.      42 U.S.C. § 1983**

Plaintiffs also allege that Defendants' actions violated 42 U.S.C. § 1983.  To prevail on a

section 1983 claim, the Plaintiffs must show (1) that they were "deprived of a right secured by

the Constitution or laws of the United States, and (2) that the deprivation was committed by a

person acting under color of state law."  *Alexis,* 286 F. Supp. 2d at 560 (citing *West v. Atkins*,

487 U.S. 42, 48 (1988)).  Defendants allege that "Plaintiffs' Section 1983 claims should . . . be

dismissed since Section 1983 is merely a vehicle Plaintiffs have selected for asserting violations

of federal statutes. . . . Section 1983 does not provide a separate claim for relief."  (Defs.' Mem.

Supp. Summ. J. 17.)  Defendants are correct that, if "the Plaintiffs have not shown that they were

deprived of a right secured by the Constitution or by federal law, they cannot defeat summary

judgment." *Alexis*, 286 F. Supp. 2d 551, 560 (D. Md. 2003); *Hodge v. Jones*, 31 F.3d 157, 167

(4th Cir. 1994) (quoting *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988)) ("If there is no

violation of a federal right, there is no basis for a Section 1983 action. . . .").  In light of this

Court's ruling remanding the case to OAH for an evidentiary hearing, Plaintiffs' Section 1983

claims need not be addressed at this time.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED, and

Defendants' Motion for Summary Judgment is DENIED, and the case will be REMANDED to

the Maryland Office of Administrative Hearings for additional proceedings consistent with this

Memorandum Opinion.  A separate Order follows.

/s/_____
Richard D. Bennett
United States District Judge

Date:  April 25, 2007